**DAN A. DRUZ (DD-6177)**
291 E. Main St.
Suite 1000
Manasquan, NJ 08736
732 223-7676
Attorney for Plaintiff
Pristine Capital Holdings, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PRISTINE CAPITAL HOLDINGS INC.,

Plaintiff,

v.

VELEZ CAPITAL MANAGEMENT, LLC,
OLIVER VELEZ, PAUL LANGE, SAUL
ORTIZ-STEVENS, AND STEPHEN CINA,

Defendants.

---

07 CIV 5720 (WHP)

Civil Action

**COMPLAINT
AND JURY DEMAND**

Plaintiff, Pristine Capital Holdings through its undersigned attorney, by way of Complaint against Defendants Velez Capital Management, Oliver Velez, Paul Lange, Saul Ortiz-Stevens, and Stephen Cina, states as follows:

### Parties

1. Plaintiff Pristine Capital Holdings Inc. ("PCH") is a Delaware corporation with its principal place of business located at 7 – 11 Broadway, Suite 210, White Plains, New York 10601.

2. Defendant Velez Capital Management ("VCM") is, upon information and belief, a limited liability corporation organized and existing under the laws of the State of

New York, having its principal place of business at 130 W. 42nd. St., 21st Fl., New York, NY 10036.

3. Defendant Oliver Velez ("Velez") is the former Chairman and CEO of PCH, and is presently the CEO of VCM.

4. Defendants Paul Lange ("Lange"), Saul Ortiz-Stevens ("Ortiz") and Stephen Cina ("Cina") (collectively, "the employee defendants") – are former key employees of PCH and are presently employed as executives of VCM.

### Nature of the Dispute

7. Plaintiff, through a subsidiary, provides educational support and information services to active traders via the internet, seminars, publications, and DVDs and is considered to be a leader in the securities education industry.

8. Combined, these services are known to clients and to the public by the registered service marks and trademarked sales, marketing and educational process – "The Pristine Method®" ("TPM®").

9. Defendant Velez is the former Chairman and CEO of PCH. For more than ten years, he had been the "face" of the company. However, he was relieved of his duties on November 20, 2006, and was subsequently terminated on February 21, 2007 by PCH for breaches of fiduciary duty to PCH, and a number of major violations of company policy, including, but not limited to, converting more than $250,000.00 of corporate funds to his personal use; for removing, disclosing and using PCH intellectual property without permission; and for surreptitiously commencing the formation of a new company – Defendant VCM – that would directly compete against PCH.

10. Once relieved of his duties in November of 2006, Defendant Velez, who was one of the co-founders of the company a decade earlier, conceived and commenced a plan of retaliation against his former company. The gist of his plan was the secret formation of VCM, a company whose purpose was to compete directly with PCH. In fact, while still employed by PCH, Velez registered two websites, one on December 20, 2006 and another on February 14, 2007.

11. With the benefit of hindsight, it is now clear that soon after he was relieved of his duties as head of the company in November, 2006, Velez surreptitiously began collecting and copying confidential information, such as customer lists, seminars on DVD, and other material. The content of the DVDs and other media, is packaged and sold to PCH's customer base, and a primary source of revenue for the company.

12. By February, if not earlier, and while still in the employ of PCH, Velez was also developing relationships with other companies, which he claimed was for the benefit of PCH. He ignored the requests of PCH executives, however, that he not develop associations with certain individuals whose reputation was inconsistent with PCH's corporate image, policies and objectives.

13. Contrary to these instructions, Velez proceeded to promote a joint seminar with a company of poor reputation in the securities education industry. When confronted by PCH management at that time, Velez intentionally deceived them by falsely claiming that the advertised event was for the exclusive benefit of PCH, when in fact the purpose of the seminar was the launching of Defendant VCM, Velez's new venture.

14. It is incontestable that Velez's actions were in breach of his fiduciary duties and his duty of loyalty to PCH, of which he presently continues to be a 47% owner.

15. As demonstrated in emails sent by a company Vice-President to Velez on February 12, 2007, in which the executive complained to Velez that his inexplicable, public association with another securities industry entity of dubious reputation, his actions were causing confusion and discomfort among PCH staff and its customers:

> "[Customers and employees] see HLV commercials on CNBC for you doing a seminar with [a potential competitor] and wonder what the hell is going on. You tell us that it's nothing to worry about because you are "just" doing a book signing and will only be there for the last 5 minutes. Well I find it hard to believe that HLV is going through all this marketing just for 5 minutes of your time to sign books. There is no mention of any book signing.... It's marketed as a seminar that you are doing and they removed all links to Pristine. On top of all that, [our employees] are all in the dark about this. No one was informed about this. We have to find out about it via our clients. But not only that, you proceeded to set this up in a clandestine manner.

In fact, despite Velez's denials, his presence at the seminar was heavily promoted and advertised by the potential competitor on February 8 and February 9, 2007 on their website's home page, while Velez was still employed by PCH.

16. The seminar took place on February 18, 2007 as advertised. When PCH employees attempted to attend in order to observe Velez's role at the presentation, they were physically blocked from entering the room. Their exclusion was for reasons that later became obvious. Velez was using the venue to launch his new company, VCM.

17. Velez was immediately terminated, by letter dated February 21, 2007. The seminar event, in concert with the previous discovery of the conversion of a quarter million dollars in corporate funds to his personal use, including lavish dinners, and large cash advances against his Corporate American Express Card at "strip clubs", were the precipitating, but not the only factors that resulted in Velez's termination.

4

18. In response to his termination, Velez clearly indicated his mistaken belief that the proprietary information and materials underlying "The Pristine Method®" belonged to him, and that he would use them as he saw fit.

19. Contemporaneous with his termination from PCH, Velez was illicitly inducing certain key employees of PCH – the defendant employees here, Lange, Ortiz and Cina – to breach their employment contracts with PCH.

20. On information and belief, on or about 2/14/07 VCM hired Defendant Ortiz even before Velez's termination with PCH. On or about 3/30/07 VCM hired Defendant Lange. On or about 4/25/07, VCM hired Defendant Cina. Reviewing now, Ortiz's and Cina's actions at that time, it is clear that they were conspiring with Velez to leave the firm prior to Velez's termination.

21. The employee defendants' employment contracts state in pertinent part at Paragraph "10" thereof:

> "...Therefore, you agree and consent that, in addition to all of the remedies provided at law or in equity, the Company will be entitled to obtain injunctive relief from a court to prevent any breach or contemplated breach of any of the covenants. The existence of any claim or action by you against the Company does not constitute a defense to the enforcement by the Company of any of the covenants or agreements in this letter. The Company will be entitled to recover reasonable attorneys' fees and costs from you in any action to enforce or defend its interests arising out of or relating to this [contract]."

22. Velez induced the employee defendants to breach their (identical) employment contracts, in contravention of the restrictive covenants contained therein at Paragraphs 3, 4, 5 and 6. There can be no doubt that he was completely conversant with the terms of their

contracts, as he had executed them on behalf of PCH when the agreements were originally signed by the employee defendants' during the prior five years.

23. In the course of his employment, Velez and the employee defendants had unfettered access to PCH's customer lists and other confidential and proprietary information. On information and belief, the materials taken by Velez and the employee defendants, included critical information regarding its customers, including contact information, and a description of their needs and preferences for marketing purposes.

24. The information was confidential and belonged exclusively to PCH, which had compiled it over many years, and at significant cost. It comprised vital marketing and competitive information that could cause grave damage to PCH, if placed in a competitor's hands.

25. After the New York seminar in February of 2007, Velez quickly executed his plan to develop a new company to compete with PCH, including the development of a website that was a clone of the PCH website, offering DVDs and other publications that were clones of the TPM®.

25. Also, prior to his termination, Defendant Velez indicated that he was planning a seminar to be held in the first week of April, 2007 in Washington, D.C., under the auspices of PCH. Then, after his termination, Velez deceptively usurped this corporate opportunity, and made the presentation in conjunction with other corporate interests.

26. Most of the customers of PCH initially learn the securities trading process and methodology known as the "The Pristine Method®" by attending seminars. The basics of the process are presented through a lengthy "power point" presentation, which consists entirely of materials that are subject to registered service marks, trademarks and copyrights.

27. PCH offers two different seminars for different levels of expertise. Defendants Velez and VCM have fully co-opted one of the two presentations -- the introduction to "The Pristine Method®". Indeed in the manual provided to VCM seminar subscribers, which Velez has denominated "Trade for Life" approximately two thirds of the written presentation consists of charts lifted directly from the manual used for introduction to "The Pristine Method®". This is the manual that is a focus of this Complaint.

28. According to VCM's website, the next and most audacious step in Velez's brazen plan to ruin PCH, will take place next week in San Diego, California, at the San Diego Traders Expo, scheduled for June 20, 21, 22, and 23 where, if permitted to go forward, Velez will continue to illicitly deploy the stolen intellectual property previously made public at the New York Online Traders Expo, and on information and belief, other PCH property as well.

29. On information and belief, notwithstanding their covenants not to compete, solicit and/or disclose, the employee defendants will participate in the San Diego event as well.

30. Velez's actions have caused disruption and confusion among PCH's staff; its client base, lists of which Velez illicitly spirited out of the firm prior to his termination, and the public. His acts have lessened corporate morale, and in addition to the defendant employees' departure, one other important employee has left. These departures have cost PCH at least a million dollars in revenues, and in a small company like PCH, with less than twenty professionals on staff in its educational subsidiary at the beginning of the year, a 25% loss in key employees is a substantial one.

31. On Velez's website, and in his promotional materials, he brags:

> "His 'Trade for Life' seminars and five day live trading
> sessions have been attended by more than 60,000 traders all

over the world...."

<u>The statement and its purpose is at the core of this lawsuit.</u> Velez has not presented to 60,000 people; the PCH organization and its team of instructors accomplished that feat over the last decade, using the "The Pristine Method®", not the newly spawned "Trade for Life" ripoff that Velez is presently relying upon.

32. This intentionally confusing statement is an attempt to exploit the goodwill and registered service marks of "TPM®". Also, by creating a website and promotional material that trumpets Velez's prior connection with PCH in a misleading manner, VCM further contributes to confusion among the public, especially the part that constitutes PCH's customer base.

33. Velez is also interfering with PCH's advantageous business relations, particularly with its publisher, who, as a result of misleading statements and pressure by Velez, has placed a moratorium on the publishing and promoting of certain PCH merchandise that had been produced less than two weeks ago at significant expense, and is ready to be marketed.

34. In sum, Velez and VCM are unfairly competing by using PCH's client lists, photocopies of TPM® materials, intellectual property, business contacts, goodwill, and former personnel who are in breach of employment agreements that were negotiated by Velez himself, on behalf of PCH, all with the intent to confuse the public to Velez and VCM's advantage.

35. To redress the injuries it has suffered, PCH seeks, *inter alia*, immediate injunctive relief with respect to use of stolen intellectual and proprietary customer information, an immediate accounting of all revenue derived from PCH's customers, and

expedited discovery.

36. By virtue of the facts set forth herein, PCH seeks to redress its injuries through emergent, equitable relief, and under several causes of action – <u>including immediate injunctive relief enjoining all of the Defendants from presenting the "Trade for Life" seminars or offering for sale related product, at the upcoming San Diego Traders Expo or anywhere else</u>; an immediate return of all materials taken from PCH during the employment of Velez and the employee defendants; immediate injunctive relief as to the enforcement of the employee defendants' breaches of covenants not to compete, not to solicit, and not to reveal confidential information; monetary compensation for breach of the duty of loyalty, for tortious interference with prospective economic advantage, for tortious interference with advantageous relations and contracts, for conversion, and for misappropriation of confidential information.

37. Upon a plenary hearing PCH will also seek permanent injunctive relief, compensatory and punitive damages, common law remedies, and contractual remedies, including attorney's fees as provided in the employee defendants' employment contracts.

## Jurisdiction and Venue

38. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and arises under the Trademark Act of 1946 as amended, 15 U.S.C 1114(1).

39. Venue lies in this district pursuant to 28 U.S.C. § 1391(a) because most of the defendants are subject to personal jurisdiction in this district, many of the individual defendants reside in this district, and a substantial part of the events giving rise to PCH's claims occurred in this district as well.

## FIRST CAUSE OF ACTION
### (Violation of 15 U.S.C. Section 1125 (a))

40. For over a decade, PCH, and "The Pristine Method®" ("TPM®") have set the standard for the education of active securities traders around the world. The resources and methods used are all subject to registered service, trademarks and copyrights. VCM and Velez, through repeated reference, and by cloning TPM® for his own use, are causing great confusion among the trading community and the public at large, to the detriment of PCH.

## SECOND CAUSE OF ACTION
### (Unfair Competition)

41. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

42. Through both documented conduct, and on information and belief, defendants have engaged in a variety of acts, including the conversion of confidential information owned by PCH to the use of VCM, in bad faith and with intent to injure, weaken or destroy PCH's rights in the TPM® and other marks, and to appropriate highly valuable goodwill belonging to PCH.

## THIRD CAUSE OF ACTION
### (Breach of Contract and the Covenants Not to Compete, Not to Solicit and Not to Disclose Confidential Information as to Defendants Lange, Oritz and Cina)

43. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

44. In the employment contracts the employee defendants agreed to covenants not to compete with PCH, not to solicit customers or employees, and/or not to divulge confidential information during their employment by PCH or for one year after their departure

from PCH.

45. The employee defendants have breached their covenants: 1) by joining VCM, a direct competitor firm; and 2) by soliciting current and former PCH customers and employees.

46. The employee defendants have breached their covenants by the defendant employees not to disclose confidential PCH information obtained during that employment or for one year after termination of that employment except in connection with their employment by PCH.

47. The Defendant employees have violated the covenant not to use or disclose confidential information by using confidential information, including but not limited to customer lists, pricing structures and stock trading processes, and TPM® to solicit current PCH customers.

48. Plaintiff has therefore been damaged in an amount as yet undetermined and is entitled to compensation therefore, compensation as well as for the salary paid by PCH to the employee defendants for all periods of time during which they were in breach of their covenants not to compete and not to use or disclose confidential information.

## FOURTH CAUSE OF ACTION
(Breach of the Duty of Loyalty as to Defendant Velez)

49. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

50. Defendant Velez owed a duty of loyalty and other fiduciary duties to PCH as its Chairman and CEO and because of his 47% ownership interest.

51. By commencing, surreptitiously, the formation of Defendant VCM while still

employed by PCH, and as a 47% owner of PCH, and by inducing the employee defendants to breach their PCH employment contracts and the non-compete, non-solicitation, and non-disclosure, Velez breached his duty of loyalty to PCH.

52. By performing work for defendant VCM while employed by PCH, Velez breached his duty of loyalty to PCH.

53. By providing confidential PCH information to defendant VCM, which is in direct competition with PCH, Velez breached his duty of loyalty to PCH.

54. Defendant Velez committed the acts described in this Complaint in part with the intent to harm PCH.

55. Plaintiff has therefore been damaged in an amount as yet undetermined and is entitled to compensation therefore.

### FIFTH CAUSE OF ACTION
(Tortious Interference with Prospective Economic Advantage as to Defendants Velez, Lange, Ortiz and Cina)

56. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

57. In order to solicit and enter into contracts with current and former PCH customers, and in order to provide service to those customers, Defendant Velez and the employee Defendants intentionally and maliciously used confidential PCH information, including but not limited to customer lists and pricing structures.

58. As a result of the intentional and malicious use by Defendant Velez and the employee Defendants of confidential PCH information in the course of their solicitation of current and former PCH customers, some of PCH's customers have terminated all or part of their relationships with PCH and/or entered into relationships with defendant VCM.

59. There is at least a reasonable probability that in the absence of the intentional and malicious use of confidential PCH information by defendants in the course of their solicitation of current and former PCH customers, those customers would not have terminated all or part of their relationships with PCH and would have continued their relationships with PCH.

60. On information and belief, Defendant and the employee Defendants have used confidential information to solicit PCH customers with the intent to harm PCH.

61. Plaintiff has therefore been damaged in an amount as yet undetermined and is entitled to compensation therefore, punitive damages and injunctive relief.

## SIXTH CAUSE OF ACTION
(Conversion as to all Defendants)

62. By providing PCH intellectual property and confidential information to defendant VCM customers and prospective customers without authorization from PCH, the defendants have deprived PCH of the revenues from the sale of DVD's and revenues from the sale of seminar admissions and other compensation. Plaintiff therefore has been and continues to be damaged in an amount as yet undetermined and is entitled to compensation therefore, and injunctive relief.

## SEVENTH CAUSE OF ACTION
(Faithless servant)

63. Defendant Velez's conduct is that of a faithless servant under New York law and he must disgorge all salaries and profits earned both prior to and after his termination from PCH.

64. The conduct of the defendants threatens PCH with irreparable harm for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests that this Court grant the following relief:

    A.    On all of PCH's Causes of Action, economic and compensatory damages in an amount in excess of $1,000,000, the exact amount to be proven at trial.

    B.    On all of PCH's Causes of Action, punitive damages in an amount not less than $100,000 on each claim.

    C.    A temporary restraining order, preliminary injunction and permanent injunction:

        1.    Directing all Defendants not to use materials obtained from PCH, including but not limited to materials taken from "The Pristine Method®" manual, and from using the "Trade for Life" manual, including any excerpts or materials therefrom, at the San Diego Traders Expo during the period June 20, 21, 22, and 23, 2007;

        2.    Directing all Defendants to immediately Cease and Desist from copying and plagiarizing Plaintiffs' copyrighted and trademarked material, and registered service marks, including but not limited to The Pristine Method®;

        3.    Directing all Defendants to immediately Cease and Desist from copying and plagiarizing materials copyrighted and trademarked by Plaintiffs and presenting them to the public as "Trade for Life" by Velez Capital Management;

        4.    Directing all Defendants to immediately Cease and Desist from hiring Plaintiffs' employees in breach of their employment agreements with PCH;

        5.    Directing all Defendants to immediately Cease and Desist from breaching the employment agreements of Defendants Paul Lange, Saul Ortiz-Stevens, and Stephen Cina, which contain restrictive covenants at Paragraphs "3", "4", "5", and "6" forbidding the Defendants from competing with Plaintiff for one year after their employment terminates with PCH; from soliciting Plaintiff's customers or employees for one year after their employment terminates with PCH; and from ever disclosing the Confidential Information of PCH.

6. Directing all Defendants to immediately Cease and Desist from presenting to current and future customers "The Pristine Method®" and other registered and trademarked materials;

7. Directing Velez and VCM to provide an accounting of all revenues of VCM to date, broken down by product category;

8. Directing Velez and VCM to disgorge all salaries and profits, and all Defendants to return all PCH materials removed during the period of Defendants' employment, and to identify and erase and/or return as applicable, all electronic records taken from PCH during the period of Defendants' employment; .

9. Directing Velez and VCM to cease and desist from interfering with the business relationship between PCH and Traders Library, and from directing Traders Library not to withhold the publishing and distribute for sale of any PCH materials.

10. Permitting plaintiff to conduct expedited "discovery".

### JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

By: _____
Dan A. Druz

Dated: June 13, 2007

### CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other court, arbitration or administrative proceeding.

_____
Dan A. Druz